UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION


SOUTHERN COAL SALES CORPORATION

PLAINTIFF

CASE NO. ____7:12cv265____

v.


XCOAL ENERGY & RESOURCES, XCOAL ENERGY
& RESOURCES, LLC, and ERNIE L. THRASHER

DEFENDANTS


## COMPLAINT

Plaintiff, Southern Coal Sales Corporation ("SCS"), for its Complaint against the Defendants, Xcoal Energy & Resources ("Xcoal"), Xcoal Energy & Resources, LLC ("Xcoal LLC" and, together with Xcoal, "the Xcoal Defendants"), and Ernie L. Thrasher ("Thrasher"), allege and state:

### THE PARTIES, JURISDICTION AND VENUE

1.      SCS is a Delaware corporation with its principal place of business located in Roanoke, Virginia.

2.      Xcoal is, upon information and belief, a Pennsylvania limited partnership with its principal place of business located in Latrobe, Pennsylvania. Upon information and belief, none of Xcoal's partners are citizens or residents of Delaware or Virginia.

3.      Xcoal LLC is, upon information and belief, a Pennsylvania limited liability company with its principal place of business located in Latrobe, Pennsylvania. Upon

information and belief, none of Xcoal's members are citizens or residents of Delaware or Virginia.

4.     Thrasher, upon information and belief, is a citizen and resident of Florida, and he is the principal owner of the Xcoal Defendants as well as Xcoal LLC's managing partner.

5.     This Court has subject matter jurisdiction over this action because it is between citizens and residents of different states and because the amount in controversy, excluding interest and costs, exceeds the sum of $75,000.

6.     The Xcoal Defendants are subject to jurisdiction in this Court because the claims asserted herein arise, in material part, from their doing business in Virginia including, *inter alia,* from entering into contracts which were to be performed by Xcoal in Virginia.

7.     Thrasher is subject to jurisdiction in this Court because the claims asserted herein arise, in material part, from torts committed in and injury incurred by SCS in Virginia and because he caused and directed the Xcoal Defendants' acts of doing business in Virginia out of which this action arises.

8.     Venue is proper in this Court because a substantial portion of the events and omissions giving rise to this action took place in this District.

## COMMON FACTUAL ALLEGATIONS

9.     Prior to and/or during March 2011, SCS and Thrasher began discussing a transaction whereby SCS would sell and Xcoal would buy metallurgical and soft coking coal, to be delivered over a period of one year by SCS to Xcoal at SCS's rail load-outs in Virginia, Kentucky and West Virginia.

10.     During these discussions Thrasher inquired as to how many tons of metallurgical and soft coking coal SCS had available for sale, and SCS advised Thrasher that SCS's operating

affiliates were producing substantial tons of metallurgical and soft coking coal per year and were expanding their operations to produce additional tonnage.

11.    Thrasher represented to SCS he could sell all of SCS's available metallurgical and soft coking coal.

12.    Thrasher, in convincing SCS to transfer its business to Xcoal, represented to SCS among other things:

        i)      In response to SCS's asking Thrasher how many tons Xcoal could and wanted to purchase, Thrasher responded that Xcoal could handle any quantity produced by SCS, because as Thrasher stated. "I can buy it all because I have an unlimited marketplace";

        ii)     That Xcoal had was a major player in and had a significant amount of the coal sales business in Korea, Japan and China tied up;

        iii)    That he had just returned from Asia and had contracts for delivery and therefore he could pay SCS for its coal product the stated prices which became part of the purchase orders described below.

13.    Based upon Thrasher's representations and guarantees of performance, SCS shifted a majority of its coal sales relationship from its existing customers to Xcoal, in some cases away from customers that had been customers of SCS's affiliates for decades.

14.    In March and April 2011, SCS and Xcoal entered into, among others, the following purchase orders:

        A.      Purchase Order No. MET3345-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit A), which obligated Xcoal to purchase 120,000 tons of low/mid vol metallurgical coal.

B.  Purchase Order No. MET3346-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit B) , which obligated Xcoal to purchase 320,000 tons of mid vol metallurgical coal.

C.  Purchase Order No. MET3348-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit C), which, as amended, obligated Xcoal to purchase 490,000 tons of high vol soft coking metallurgical coal.

D.  Purchase Order No. MET3349-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit D), which obligated Xcoal to purchase 200,000 tons of high vol metallurgical coal.

E.  Purchase Order No. MET3350-11 dated March 17, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit E), which, as amended, obligated Xcoal to purchase 360,000 tons of high vol soft coking metallurgical coal.

F.  Purchase Order No. MET3370-11 dated June 8, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit F), which obligated Xcoal to purchase 1,700,000 tons of high vol metallurgical coal.

G.  Purchase Order No. MET3371-11 dated June 8, 2011, between Xcoal, as buyer, and SCS, as seller (Exhibit G), which obligated Xcoal to purchase 720,000 tons of high vol soft coking metallurgical coal.

15.  All told, Xcoal was obligated under these purchase orders to take 3.91 million tons of coal and to pay SCS over $560 million for the coal.

16.  Less than 60 days after entering into the above described purchase orders, Xcoal routinely and persistently refused to accept delivery of the contractually designated volumes of SCS's coal under the purchase orders; in fact on some purchase orders Xcoal has refused to accept delivery of any coal.

17.  During Xcoal's continuous nonperformance SCS consistently attempted to contact Thrasher and Xcoal via email, telephone and text message to schedule meetings or conference calls to discuss Xcoal's nonperformance.  In most instances SCS would receive no response from Thrasher or Xcoal.

4

18.     In rare instances when Xcoal and/or Thrasher would respond to SCS communications, Xcoal and/or Thrasher would commit to scheduled follow up conference calls, meetings and shipping schedules, but Xcoal and Thrasher consistently failed to follow through on their commitment to have a phone call, in person meeting or provide a shipping schedule.

19.     Because, by early 2012, Xcoal had continuously failed to perform under the above purchase orders and based on Thrasher's continuing assurances and promises of performance, SCS agreed to amend the above mentioned purchase orders to extend Xcoal's performance deadlines throughout 2012 and into the first three months of 2013 ("the Amended POs").

20.     Like the above mentioned purchase orders, the Amended POs constituted binding contracts for the purchase and sale of coal.

21.     Since amending the purchase orders, notwithstanding Thrasher's assurances and promises to perform, Xcoal continuously failed to perform under the Amended POs.  As of the date of this Complaint, Xcoal has purchased the following coal tonnages on the Amended POs:

       A.     Purchase Order No. MET3345-11:  zero tons purchased of 200,000 required tons.

       B.     Purchase Order No. MET3346-11:  zero tons purchased of 320,000 required tons.

       C.     Purchase Order No. MET3348-11:  34,943 tons purchased of 490,000 required tons.

       D.     Purchase Order No. MET3349-11:  zero tons purchased of 200,000 required tons.

       E.     Purchase Order No. MET3350-11:  102,416 tons purchased of 360,000 required tons.

5

F. Purchase Order No. MET3370-11: 253,144 tons purchased of 1,700,000 required tons.

G. Purchase Order No. MET3371-11: 516,009 tons purchased of 720,000 required tons.

22. Between December 15, 2011 and June 2012, SCS has delivered to Xcoal a total of 450,856.45 tons of coal, which was all of the coal ordered by Xcoal during that period. Xcoal was obligated to pay $45,339,927.25 for that coal; however, to date, Xcoal has paid only $20,831,117.85 towards its total payment obligation for the delivered coal, leaving a balance due of $24,508,809.40.

23. As a result, Xcoal has breached its obligations to pay SCS for coal that was delivered to it.

24. Moreover, even after the amendments to the purchase orders, Xcoal has failed to order any coal on nearly all of the POs since the date of the amendment..

25. Based on past performance, it is plain that Xcoal will be unable to fulfill its contractual obligations to take the additional 3,003,488 tons of coal that it has yet to schedule under the Amended POs for delivery by March 2013..

26. Thus, Xcoal has repudiated its obligations, and accordingly breached its obligations, to purchase 3,003,488 tons of coal under the Amended POs or, alternatively, by this pleading, SCS demands adequate assurances, acceptable to SCS, from Xcoal, to be delivered by Xcoal to SCS within 21 days from the service of this pleading, that it is willing and able to purchase all of the remaining 3,003,488 tons of coal by March 2013.

27.     During the time periods of the purchase orders and the Amended POs, SCS and its affiliates were negotiating with a prospective buyer to sell to those buyers the coal operations that supported the purchase orders and the Amended POs.

28.     Because of the breaches and utter nonperformance by Xcoal complained of herein, Plaintiff and its affiliates were denied the opportunity to sell certain of their operations at substantial profits.

29.     At all times Thrasher and the Xcoal Defendants were aware of the efforts by Plaintiff and its affiliates to sell certain of their operations, as well as the impact that their breaches of the POs would have on that effort.

30.     Moreover, as was known to Defendants would be a consequence of their breaches and misrepresentations, Plaintiff and its affiliates have been required to shut down operations, lay off miners and/or eliminate work shifts.

31.     Plaintiff has performed all conditions precedent to bringing this action, and/or all such conditions have been waived or excused.

## COUNT I:  BREACH OF CONTRACT

32.     This is a claim for breach of contract against the Xcoal Defendants.

33.     In support of this Count, Plaintiff realleges the allegations in the preceding paragraphs as if fully set forth herein.

34.     Xcoal has failed to pay SCS $24,508,809.40 that is due with interest for coal that SCS has delivered to Xcoal.

35.     In addition, Xcoal has failed to purchase 120,000 tons of low/mid vol met coal that it was required to purchase under Amended PO No. 3345-11 for a total contract price of $24,240,000.

36.     In addition, Xcoal has failed to purchase 320,000 tons of mid vol met coal that it was required to purchase under Amended PO No. 3346-11 for a total contract price of $72,000,000.

37.     In addition, Xcoal has failed to purchase 455,057 tons of high vol soft coking coal that it was required to purchase under Amended PO 3348-11 for a total contract price of $47,780,985.

38.     In addition, Xcoal has failed to purchase 200,000 tons of high vol met coal that it was required to purchase under Amended PO No. 3349-11 for a total contract price of $32,120,000.

39.     In addition, Xcoal has failed to purchase 257,584 tons of high vol soft coking coal that it was required to purchase under Amended PO No. 3350-11 for a total contract price of $27,046,320.

40.     In addition, Xcoal has failed to purchase 788,847 tons of high vol met coal that it was required to purchase under Amended PO 3370-11 at $160.60 per ton and another 658,009 tons of high vol met coal under that same Amended PO at $130.60 per ton for a total contract price of $212,624,803.20.

41.     In addition, Xcoal has failed to purchase 203,991 tons of high vol soft coking coal that it was required to purchase under Amended PO 3371-11 for a total contract price of $21,419,055.

42.     Xcoal's breaches aforesaid have proximately damaged SCS in an amount to be proved in this action.

43.     Xcoal LLC is liable to Plaintiff for Xcoal's breaches as the general partner of Xcoal.

## COUNT II: FRAUD

44.     This is an action for fraud by SCS against Thrasher and the Xcoal Defendants.

45.     SCS incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint, as if fully set forth herein.

46.     Defendants' representations of their ability to perform under the purchase orders and the Amended POs, including but not limited to the representations mentioned above, were false and constitute a misrepresentation of existing facts, which Defendants made in order to induce SCS's reliance thereupon.

47.     SCS has justifiably relied upon Defendants' misstatements by entering into the purchase orders and Amended POs and by committing a majority of its coal to support its commitments under the purchase orders and the Amended POs.

48.     In addition to the misrepresentations described above,  Defendants, at various times, have declined to purchase coal, telling SCS that they did not have a market, when in fact they were then buying coal from other suppliers at reduced prices in order to profit from their breaches.  Defendants made these representations intentionally, in an effort to cover up their misconduct.

49.     SCS's reliance upon Defendants' misrepresentations has inured to their detriment.

50.     Moreover, as a foreseeable and proximate consequence of Defendants' misrepresentations and their failure to perform as represented, Plaintiff and its affiliates have: suffered lost revenue and profits; suffered significant negative impacts to their mining operations in the form of layoffs, shift reductions and other similar results; and lost their profitable sale of certain operations.

51.     Defendants have acted in this regard maliciously, wantonly, willfully and in reckless and callous disregard of the rights of SCS warranting an award of exemplary damages against Defendants.

## COUNT III:  DURESS

52.     In support of this count, SCS incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

53.     From January 2011 to the date of the amendment to the purchase orders and further through the date of this Complaint, Xcoal routinely and persistently refused to accept delivery of the contractually designated volumes of SCS's coal under the purchase orders and the Amended POs.

54.      During said period, Plaintiff's economic survival and that of its affiliates depended heavily upon Xcoal's willingness to accept the amounts of coal that it contracted for under the purchase orders and the Amended POs, and Defendants were keenly aware of this fact.

55.     Prior to amending the purchase orders and thereafter, and banking on their breaches and the resulting duress that Xcoal knew it was causing Plaintiff and its affiliates, Xcoal demanded that SCS agree to extend times for performance by Xcoal.

56.     Because Plaintiff's economic survival and that of its affiliates depended in large part upon Xcoal's compliance with its obligations to accept delivery of the stipulated volumes of coal under the purchase orders and the Amended POs, SCS agreed to extensions for the time for performance under the purchase orders and the Amended POs.

57.     As a result of the foregoing, SCS incurred and continue to incur substantial damages.

WHEREFORE, Plaintiff prays that it be awarded damages as follows:

A.  On Count I, for compensatory damages against Xcoal and Xcoal LLC;

B.  On Count II, for damages against all Defendants, compensatory, consequential and punitive;

C.  On Count III, for compensatory damages against Xcoal and Xcoal LLC;

D.  On all Counts for pre-judgment interest, costs and a reasonable attorney's fee;

E.  For such other relief as is deemed just and proper.

**SOUTHERN COAL SALES CORPORATION**

By____*/s/M. Mallory Mantiply*_____
          Counsel

M. Mallory Mantiply (Bar No. 19722)
Spilman Thomas & Battle, PLLC
Post Office Box 90
310 First Street, Suite 1100
Roanoke, Virginia 24002-0090
Telephone:    (540) 512-1800
Facsimile:    (540) 342-4480
Email: mmantiply@spilmanlaw.com

and

Paul E. Sullivan (*Pro Hac Vice Application Pending*)
Barry D. Hunter (*Pro Hac Vice Application Pending*)
Medrith Lee Norman(*Pro Hac Vice Application Pending*)
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, Kentucky 40507
Telephone:    (859) 231-0000
Facsimile:    (859) 231-0011

*Attorneys for Plaintiff*



**Xcoal**
ENERGY & RESOURCES
PURCHASE ORDER NO. MET3345-11

Seller:  Southern Coal Sales Corporation          Date: March 17, 2011
         106 Lockheed Drive
         Beaver, West Virginia  25813-8962
         Attn: Jay Justice

Payment Terms: Net 30 days from receipt of invoice

Invoicing: To be forwarded to Xcoal Energy & Resources, P.O. Box 551, Latrobe, PA 15650 or
           designated subsidiary as per shipping release

Product:   Tams Washed Low/Mid Vol Metallurgical Coal

Quantity:  120,000 Net Tons

Delivery Period:  December 2011 ~~March 2012~~  *Mid Month Dec 2013* ☒ *2-11-12*

Quality: (Dry Basis, except Moisture)

| | | | |
|---|---|---|---|
| Moisture: | 8.00% Max | Fluidity: | 100 DDPM |
| Ash: | 7.00% Max | Amu: | +80 |
| Volatile: | 19.00% Min – 22.00% max | FSI: | 9 min |
| Sulfur: | 1.48% ~~Max~~ | Oxidation: | 90 min |
| Reflectance: | 1.45-1.52 | Size: | 2" X 0 |

Price:  $202.00 N.T. FOB Railcar  Gary #6/Seminole Prep Plant NS Mine #1101 in unit
        train shipments
                              *or Another NS Rail Loadout.* ☒ *2-11-12*

Premium/Penalty: (Dry Basis, except Moisture)

Moisture:  A reduction of $1.70 per Net Ton for each 1.00% moisture in excess of 8.00%,
           fractions prorata
Ash:   -$3.30 per Net Ton for each 1.00% ash above 7.00%, fractions pro rata
Sulfur:  -$3.30 per Net Ton for each 0.10% sulfur above 1.00%, fractions pro rata ☒
                                                          *1.48%*

Shipping Instructions:  Subject to vessel position, railroad permits, and export terminal permits

Weights & Analysis:  According to ASTM Standards
Weight:  Rail car weights to apply
Sampling & Analysis:  Destination analysis from flow sample at rail car unloading to apply.

THIS PURCHASE ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED
*(Please sign and return one copy of this Purchase Order)*

ACCEPTED AND AGREED:                          Xcoal Energy & Resources

BY                                            BY
DATE:  4-27-2011                              DATE:
                                              Ernie L. Thrasher
                                              March 17, 2011

TELEPHONE    PO BOX 551 ONE ENERGY PLACE, SUITE 9000, LATROBE, PENNSYLVANIA 15650, USA    FACSIMILE
(724) 520-1630                Email: xcoal@xcoal.com                          (724) 537-6475

**EXHIBIT A**



**ENERGY RESOURCES**
PURCHASE ORDER NO. MET3346-11

Seller: Southern Coal Sales Corporation                    Date. March 17, 2011
106 Lockheed Drive
Beaver, West Virginia  25813-8962
Attn. Jay Justice

Payment Terms: Net 30 days from receipt of invoice

Invoicing: To be forwarded to Xcoal Energy & Resources, P.O. Box 551, Latrobe, PA 15650 or designated subsidiary as per shipping release

Product:        Washed & Raw Mid Vol Metallurgical Coal

Quantity:       320,000 Net Tons

Delivery Period:  August 2011-March 2012

Quality. (Dry Basis, except Moisture)

| | | | |
|---|---|---|---|
| Moisture: | 8.00% Max | Fluidity: | 1000 DDPM |
| Ash: | 7.50% Max | Aru: | +180 |
| Volatile | 24.00% Min – 25.50% max | FSI: | 9 min |
| Sulfur | 1.00% Max | Oxidation: | .90 min |
| Reflectance: | 1.25-1.35 | Size: | 2" X 0 |

Price:       $225.00 N.T. FOB Railcar Gary/Seminole Prep Plant NS Mine #1101, in unit train shipments

Premium/Penalty: (Dry Basis, except Moisture)

Moisture:  A reduction of $1.70 per Net Ton for each 1.00% moisture in excess of 8.00%, fractions prorata
Ash:    -$3.30 per Net Ton for each 1.00% ash above 7.50%, fractions pro rata
Sulfur:   -$3.30 per Net Ton for each 0.10% sulfur above 1.00%, fractions pro rata

Shipping Instructions:   Subject to vessel position, railroad permits, and export terminal permits

Weights & Analysis:   According to ASTM Standards
Weight:         Rail car weights to apply
Sampling & Analysis.   Destination analysis from flow sample at rail car unloading to apply.

THIS PURCHASE ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED
*(Please sign and return one copy of this Purchase Order)*

ACCEPTED AND AGREED.                         Xcoal Energy & Resources

BY                                           BY.

DATE:   4-27-2011                            Ernie L. Thrasher
                                             DATE:   March 17, 2011

TELEPHONE     PO BOX 551, ONE ENERGY PLACE, SUITE 9000, LATROBE, PENNSYLVANIA 15650, USA     FACSIMILE
(724) 520-1630                     Email  xcoal@xcoal.com                          (724) 537-6175

**EXHIBIT**
**B**



**ENERGY · RESOURCES**

PURCHASE ORDER NO. MET3348-11

Seller: Southern Coal Sales Corporation
106 Lockheed Drive
Beaver, West Virginia  25813-8962
Attn: Jay Justice

Date: March 17, 2011

Payment Terms: Net 30 days from receipt of invoice

Invoicing: To be forwarded to Xcoal Energy & Resources, P.O. Box 551, Latrobe, PA 15650 or designated subsidiary as per shipping release

Product: Sequoia Washed Hi Vol Soft Coking Coal

Quantity: 400,000 Net Tons

Delivery Period: June 2011-March 2012  *March 2013* 

Quality: (Dry Basis, except Moisture)

| | | | | |
|---|---|---|---|---|
| Moisture: | 8.00% Max | Fluidity: | 3000 DDPM |
| Ash: | 9.75% Max | Amu: | +80 |
| Volatile: | 34.00% Min – 37.00% max | FSI: | 7 min |
| Sulfur | 1.10% Max | Oxidation: | 80 min |
| Reflectance: | 0.91-0.97 | Size: | 2" X 0 |

Price: **$105.00 N.T. FOB Railcar** Sequoia Prep Plant CSX Mine #43758, Bardo, Kentucky in unit train shipments  *or NS Rail - Paragon, Sigman on TurnBones*

Premium/Penalty: (Dry Basis, except Moisture)

Moisture: A reduction of $1.70 per Net Ton for each 1.00% moisture in excess of 8.00%, fractions prorata
Ash: -$3.30 per Net Ton for each 1.00% ash above 9.75%, fractions pro rata
Sulfur: -$3.30 per Net Ton for each 0.10% sulfur above 1.10%, fractions pro rata

Shipping Instructions: Subject to vessel position, railroad permits, and export terminal permits

Weights & Analysis: According to ASTM Standards
Weight: Rail car weights to apply
Sampling & Analysis: Destination analysis from flow sample at rail car unloading to apply.

THIS PURCHASE ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED
*(Please sign and return one copy of this Purchase Order)*

ACCEPTED AND AGREED                                          Xcoal Energy & Resources

BY: _____                    BY: _____

DATE: _4-27-2011_                                              Ernie L. Thrasher

                                                                      DATE  March 17, 2011

TELEPHONE          PO BOX 551, ONE ENERGY PLACE, SUITE 9000, LATROBE, PENNSYLVANIA 15650, USA          FACSIMILE
(724) 520-1030                            Email: xcoal@xcoal.com                            (724) 537-6475



**EXHIBIT C**



## Amendment No. 1

TO PURCHASE ORDER NO. MET3348-11 DATED March 17, 2011 BETWEEN Xcoal Energy & Resources AND Southern Coal Sales Corporation.

The purpose of this Amendment No. 1 is to amend the QUANTITY section to read:

QUANTITY: 490,000 tons

All other terms and conditions as per the original Purchase Order

ACCEPTED AND AGREED:                    Xcoal Energy & Resources

BY                                      BY:

                                                Ernie L. Thrasher

DATE:  6-11-2011                        DATE.   June 8, 2011



ENERGY · RESOURCES
PURCHASE ORDER NO. MET3349-11

Seller:     Southern Coal Sales Corporation          Date: March 17, 2011
            106 Lockheed Drive
            Beaver, West Virginia  25813-8962
            Attn: Jay Justice

Payment Terms: Net 30 days from receipt of invoice

Invoicing: To be forwarded to Xcoal Energy & Resources, P.O. Box 551, Latrobe, PA 15650 or
           designated subsidiary as per shipping release

Product:    Sequoia Washed Hi Vol Met Coal

Quantity:   200,000 Net Tons

Delivery Period:  June 2011-March 2012 *Thru* *March 2013*   *2-11-13*

Quality: (Dry Basis, except Moisture)

|            |              |            |            |
|------------|--------------|------------|------------|
| Moisture   | 8.00% Max    | Fluidity   | 15000 DDPM |
| Ash        | 8.00% Max    | Arnu       | +140       |
| Volatile   | 34.00% Min – 37.00% max | FSI | 7 min   |
| Sulfur     | 1.00% Max    | Oxidation  | 90 min     |
| Reflectance| 0.91-0.97    | Size       | 2" X 0     |

Price:      $160.60 N.T. FOB Railcar Sequoia Prep Plant CSX Mine #43758, Bardo,
            Kentucky in unit train shipments  *62 NS Rail – Paragon, Sigmon on Tanhole*
                                              *Plus 2-11-13*

Premium/Penalty (Dry Basis, except Moisture)

    Moisture:  A reduction of $1.70 per Net Ton for each 1.00% moisture in excess of 8.00%,
               fractions prorata
    Ash:       -$3.30 per Net Ton for each 1.00% ash above 7.50%, fractions pro rata
    Sulfur:    -$3.30 per Net Ton for each 0.10% sulfur above 1.00%, fractions pro rata

Shipping Instructions:    Subject to vessel position, railroad permits, and export terminal permits

Weights & Analysis:    According to ASTM Standards
Weight:                Rail car weights to apply
Sampling & Analysis    Destination analysis from flow sample at rail car unloading to apply.

THIS PURCHASE ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED
*(Please sign and return one copy of this Purchase Order)*

ACCEPTED AND AGREED:                            Xcoal Energy & Resources

BY:                                            BY:

DATE:  *4-22-2011*                             Ernie L. Thrasher
                                               DATE: March 17, 2011

TELEPHONE      PO BOX 551, ONE ENERGY PLACE, SUITE 9000, LATROBE, PENNSYLVANIA 15650, USA      FACSIMILE
(724) 520-1634                          Email: xcoal@xcoal.com                                (724) 537-6475

EXHIBIT
D



ENERGY RESOURCES

PURCHASE ORDER NO. MET3350-11

Seller:      Southern Coal Sales Corporation      Date: March 17, 2011
            106 Lockheed Drive
            Beaver, West Virginia  25813-8962
            Attn: Jay Justice

Payment Terms: Net 30 days from receipt of invoice

Invoicing: To be forwarded to Xcoal Energy & Resources, P.O. Box 551, Latrobe, PA 15650 or
         designated subsidiary as per shipping release

Product:     Bevins Branch Raw Hi Vol Soft Coking Coal

Quantity:    450,000 Net Tons

Delivery Period:  July 2011-March 2012

Quality: (Dry Basis, except Moisture)

| | | | |
|---|---|---|---|
| Moisture: | 8.00% Max | Fluidity: | 1000-2000 DDPM |
| Ash: | 10.00% Max | Amu: | +80 |
| Volatile: | 34.00% Min – 37.50% max | FSI: | 7 min |
| Sulfur | 1.00% Max | Oxidation: | 30 min |
| Reflectance: | 0.91-0.97 | Size: | 2" X 0 |

Price:      $105.00 N.T. FOB Railcar Sequoia Prep Plant CSX Mine #84068, Mousie
         Branch, Kentucky in unit train shipments

Premium/Penalty: (Dry Basis, except Moisture)

   Moisture:  A reduction of $1.70 per Net Ton for each 1.00% moisture in excess of 8.00%,
           fractions prorata
   Ash:     -$3.30 per Net Ton for each 1.00% ash above 10.00%, fractions pro rata
   Sulfur    -$3.30 per Net Ton for each 0.10% sulfur above 1.00%, fractions pro rata

Shipping Instructions:   Subject to vessel position, railroad permits, and export terminal permits

Weights & Analysis:   According to ASTM Standards
Weight:             Rail car weights to apply
Sampling & Analysis:   Destination analysis from flow sample at rail car unloading to apply.

THIS PURCHASE ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED
*(Please sign and return one copy of this Purchase Order)*

ACCEPTED AND AGREED:           Xcoal Energy & Resources

BY:                                  BY:

DATE:  5-27-2011                   Ernie L. Thrasher
                                   DATE:  March 17, 2011

**EXHIBIT E**



<u>Amendment No. 1</u>

TO PURCHASE ORDER NO. MET3350-11 DATED March 17, 2011 BETWEEN
Xcoal Energy & Resources AND   Southern Coal Sales Corporation.

The purpose of this Amendment No  1 is to amend the QUANTITY section to
read:

QUANTITY:  360,000 tons

*Also Holding 65 Day mine to Source* [signature]

All other terms and conditions as per the original Purchase Order

ACCEPTED AND AGREED.                       Xcoal Energy & Resources

BY: [signature]                            BY:

DATE: 6-11-2011                            Emie L. Thrasher

[signature]                                DATE:    June 8, 2011

2/14/2011                                  [signature]
                                           2/14/12



ENERGY

PURCHASE ORDER NO. MET3370-11

Seller:    Southern Coal Sales Corporation          Date: June 8, 2011
           106 Lockheed Drive
           Beaver, West Virginia  25813-8982
           Attn: Jay Justice

Payment Terms: Net 30 days from receipt of invoice

Invoicing: To be forwarded to Xcoal Energy & Resources, P.O. Box 551, Latrobe, PA 15650 or
           designated subsidiary as per shipping release

Product:   A&G Washed & Raw High Vol Metallurgical Coal

Quantity:  1,700,000 Net Tons

Delivery Period: July 2011 -March 2012  *March 2013*   *for 2-11-12*

Quality: (Dry Basis, except Moisture)

| | | | |
|---|---|---|---|
| Moisture: | 8.00% Max | Fluidity: | 20,000 DDPM |
| Ash: | 7.50% Max | Arnu: | +160 |
| Volatile: | 33.50% Min -- 34.50% max | FSI: | 7 min |
| Sulfur: | 0.98% Max | Oxidation: | 90 min |
| Reflectance: | 0.99-1.03 | Size: | 2" X 0 |

Price:     $160.60 N.T. FOB Railcar Paragon Prep Plant NS Mine #21050, or Sigmon
           Prep Plant NS Mine #20003, in unit train shipments
           *693,868 tons will Be @ 130.60, All other 160.60*

Premium/Penalty: (Dry Basis, except Moisture)    *1-11-12*

    Moisture: A reduction of $1.70 per Net Ton for each 1.00% moisture in excess of 8.00%,
              fractions prorata
    Ash:      -$3.30 per Net Ton for each 1.00% ash above 7.50%, fractions pro rata
    Sulfur:   -$3.30 per Net Ton for each 0.10% sulfur above 1.00%, fractions pro rata

Shipping Instructions:   Subject to vessel position, railroad permits, and export terminal permits

Weights & Analysis:      According to ASTM Standards
Weight:                  Rail car weights to apply
Sampling & Analysis:     Destination analysis from sample at rail car unloading to apply.

THIS PURCHASE ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED
*(Please sign and return one copy of this Purchase Order)*

ACCEPTED AND AGREED:                              Xcoal Energy & Resources

B                                            BY: _____

DATE: 6-11-2011                                   Ernie L. Thrasher
                                                  June 8, 2011
                             DATE: _____

*TELEPHONE*     PO BOX 551, ONE ENERGY PLACE, SUITE 9000, LATROBE, PENNSYLVANIA 15650, USA     *FACSIMILE*
*(724) 520-1630*              Email: xcoal@xcoal.com                                           *(724) 537-6475*

**EXHIBIT F**

Xcoal
ENERGY

PURCHASE ORDER NO. MET3371-11

Seller:   Southern Coal Sales Corporation     Date: June 8, 2011
      106 Lockheed Drive
      Beaver, West Virginia  25813-8962
      Attn: Jay Justice

Payment Terms: Net 30 days from receipt of Invoice

Invoicing: To be forwarded to Xcoal Energy & Resources, P.O. Box 551, Latrobe, PA 15850 or
      designated subsidiary as per shipping release

Product:   Jamboree Washed & Raw High Vol Soft Coking Coal

Quantity:   720,000 Net Tons

Delivery Period:  July 2011–March 2012

Quality: (Dry Basis, except Moisture)

| | | | |
|---|---|---|---|
| Moisture: | 8.00% Max | Fluidity: | 3,000 DDPM |
| Ash: | 10.00% Max | Arnu: | +80 |
| Volatile: | 34.50% Min – 36.50% max | FSI: | 7 min |
| Sulfur: | 1.00% Max | Oxidation: | 80 min |
| Reflectance: | 0.93-0.99 | Size: | 2" X 0 |

Price:   $105.00 N.T. FOB Railcar Jamboree Rail Load Out NS Mine #1895, in unit train
      shipments

Premium/Penalty: (Dry Basis, except Moisture)

Moisture:  A reduction of $1.70 per Net Ton for each 1.00% moisture in excess of 8.00%,
      fractions prorata
Ash:   -$3.30 per Net Ton for each 1.00% ash above 10.00%, fractions pro rata
Sulfur:   -$3.30 per Net Ton for each 0.10% sulfur above 1.00%, fractions pro rata

Shipping Instructions:   Subject to vessel position, railroad permits, and export terminal permits

Weights & Analysis:   According to ASTM Standards
Weight:   Rail car weights to apply
Sampling & Analysis:   Destination analysis from sample at rail car unloading to apply.

THIS PURCHASE ORDER IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED
*(Please sign and return one copy of this Purchase Order)*

ACCEPTED AND AGREED:      Xcoal Energy & Resources

BY: _____

BY: _____

DATE: _____

      Ernie L. Thrasher
DATE: _____      June 8, 2011

*TELEPHONE*   *PO BOX 551, ONE ENERGY PLACE, SUITE 9000, LATROBE, PENNSYLVANIA 15650, USA*   *FACSIMILE*
*(724) 520-1630*      *Email: xcoal@xcoal.com*   *(724) 537-6475*

EXHIBIT
G

*%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
SOUTHERN COAL SALES CORPORATION

## DEFENDANTS
XCOAL ENERGY & RESOURCES, XCOAL ENERGY & RESOURCES, LLC AND ERNIE L. THRASHER

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
M. Mallory Mantiply, Esq., Spilman Thomas & Battle, PLLC, 310 First Street, Suite 1100, Roanoke, VA 24011; (540) 512-1800

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332
Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 415,812,081.20

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 06/15/2012

SIGNATURE OF ATTORNEY OF RECORD
/s/M. Mallory Mantiply

**FOR OFFICE USE ONLY**

RECEIPT # 1561889  AMOUNT 350.00  APPLYING IFP _____  JUDGE TURK  MAG. JUDGE _____

7:12-CV-00265