CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 26 2012

JULIA C. DUDLEY, CLERK
BY: /s/
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SOUTHERN COAL SALES CORP., | ) |
| | ) Case No.: 7:12-cv-00265-JCT |
| Plaintiff/Counter-defendant, | ) |
| | ) |
| v. | ) **Memorandum Opinion** |
| | ) |
| XCOAL ENERGY & RESOURCES, | ) |
| | ) By: Hon. James C. Turk |
| Defendant/Counter-plaintiff, | ) Senior United States District Judge |
| | ) |
| and XCOAL ENERGY & RESOURCES, LLC, | ) |
| and ERNIE THRASHER, | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court on Defendants' Motion to Dismiss Counts II and III of the Complaint. ECF No. 19. Plaintiff filed a response and Defendants have replied. ECF No. 27, 29. The Court heard arguments on the motion on October 22, 2012, and it is now ripe for decision.

Defendants move to dismiss the fraud claim in Count II on two grounds. First, they argue that Plaintiff failed to plead fraud with the particularity required by Rule 9(b), Fed. R. Civ. P.. Second, they contend that Plaintiff has failed to plead an actionable fraudulent statement because the alleged misrepresentations made by Defendant Thrasher are not statements of existing material facts but instead, are either trade talk or puffery or pertain only to Defendants' intentions to perform the contract. Accordingly, Defendants argue that the statements cannot support a fraud claim under Virginia law.

Defendants also move to dismiss Plaintiff's duress claim on the grounds that it has not been adequately pled and that duress cannot be asserted as an independent claim, particularly in the absence of any request for relief in the form of the voiding of a contract. Finally, Defendants

1

move to dismiss or strike Plaintiff's claim for attorneys' fees on the grounds that it has not identified any exception to the rule that each party should pay for its own attorneys' fees, so as to entitle it to recover its fees.

As discussed in detail below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss Counts II and III, and directs Plaintiff to file an amended Complaint not later than fourteen days after entry of this Order.

I.     **FACTUAL BACKGROUND**

Accepting the well-pled facts in the Complaint as true, as this Court must when ruling on a motion to dismiss, see Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008), the facts of the case are as follows: Plaintiff Southern Coal Sales Corporation ("SCS") is a Delaware corporation with its principal place of business in Roanoke, Virginia, and is in the business of mining and selling coal. Xcoal Energy & Resources ("Xcoal") and Xcoal Energy & Resources, LLC (collectively the "Xcoal Defendants") are a Pennsylvania limited partnership and a Pennsylvania limited liability company, respectively, and both have their principal place of business in Pennsylvania. Ernie Thrasher is a citizen and resident of Florida and a principal owner of the Xcoal Defendants as well as Xcoal LLC's managing partner.[1]

In March and June 2011, SCS and Xcoal entered into a series of purchase orders, pursuant to which Xcoal agreed to purchase coal of various specifications in certain amounts and at a certain price. Under the purchase orders, Xcoal was obligated to purchase from SCS approximately 3.91 million tons of coal and to pay SCS over $560 million for the coal, with a

---

[1] SCS properly invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000. ECF No. 1, at ¶ 5. Defendants do not contest this Court's jurisdiction. ECF No. 21, at ¶ 3.

2

delivery period ending March 2012. Xcoal, however, routinely refused to accept delivery of the contractually designated volumes of the coal under the purchase orders.[2] As of the filing of the Complaint, SCS had delivered to Xcoal a total of approximately 450,856.45 tons of coal, which was all of the coal ordered by Xcoal during that period. Xcoal was obligated to pay approximately $45 million for that coal, but has only paid approximately $20 million, and still owes approximately $24.5 million for coal already delivered. Count I asserts a breach of contract claim based on these failures and anticipated failures to perform by Xcoal.

SCS further alleges that Xcoal's failure to perform under the contracts and its continuing "assurance and promises of performance" led SCS to agree to amend the purchase orders in February 2012 and to extend Xcoal's performance deadlines approximately one year, until March 2013. In Count III, titled "Duress," SCS alleges that its own "economic survival and that of its affiliates depended heavily upon Xcoal's willingness to accept the amounts of coal that it contracted for under the purchase orders and the Amended POs," that Xcoal knew this, and that Xcoal further knew that its breaches were causing duress to SCS. SCS alleges that it agreed to the extension of time for performance under the purchase orders and agreed to the Amended POs only as a result of this duress. ECF No. 1 at ¶¶ 52-57.

Count II of the Complaint alleges a fraud claim. In that claim, SCS alleges that, during the negotiations between SCS and Xcoal regarding the possible sale of coal, Thrasher inquired as to how many tons of metallurgical and soft coking coal SCS had available for sale and that Thrasher represented "he could sell all of SCS's available metallurgical and soft coking coal."

---

[2] In its Answer and Counterclaim for damages, Xcoal contends that some of the coal delivered did not meet the quality specifications as set forth in the purchase orders and thus had to be rejected. Xcoal further alleges that SCS did not timely deliver at least some of the coal ordered.

3

ECF No. 1, Compl. at ¶¶ 10-11. SCS also alleges that Thrasher made the additional further representations:

> i. In response to SCS's asking Thrasher how many tons Xcoal could and wanted to purchase, Thrasher responded that Xcoal could handle any quantity produced by SCS, because as Thrasher stated, "I can buy it all because I have an unlimited marketplace";
>
> ii. that Xcoal had was [sic] a major player in and had a significant amount of the coal sales business in Korea, Japan and China tied up; and
>
> iii. that he had just returned from Asia and had contracts for delivery and therefore he could pay SCS for its coal product the stated prices which became part of the purchase orders . . ."

Id. at ¶ 12. The Complaint alleges that the representations were false and that Defendants made them in order to induce SCS's reliance thereupon, that SCS justifiably relied upon them, and that SCS has been harmed as a result. Id. at ¶¶ 46-49.

## II.    LEGAL STANDARDS

The parties do not dispute the applicable legal standards. To survive a motion to dismiss, the plaintiff's allegations must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "It requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Additionally, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud . . ." Fed. R. Civ. P. 9(b).

4

## III. ANALYSIS

### A. Motion to Dismiss as to Count II

Although the Purchase Orders indicated that they are to be governed by New York law,[3] the parties agree that Virginia law governs the fraud claim, since Virginia is the place of the alleged wrong. The parties also appear to agree that Virginia law would govern the duress claim, and so the Court will also apply Virginia law to it, as well.

As noted, Defendants offer two independent grounds for dismissal of Count II, the fraud claim. First, Defendants contend that SCS has failed to plead the fraud count with sufficient particularity. See Fed. R. Civ. P. 9(b); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 & n.5 (4th Cir. 1999) (adopting requirement that the "circumstances" referenced in Rule 9(b) that are required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby"). The Complaint here identifies Thrasher as the person making the misrepresentations and further specifies what he obtained (on behalf of Xcoal) by making them. As to the remaining requirements, the Complaint contains a general time-frame in which the false representations were made, but not a specific date, and includes no reference to the "place" of the representations. It may be that the facts pled are sufficient to comply with Rule 9(b), for purposes of surviving a motion to dismiss. Cf. Harrison, 176 F.3d at 784 ("A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at

---

[3] See ECF No. 21 at Exhibits A-G (containing "Terms and Conditions of Purchase," incorporated by reference into each Purchase Orders). Based on this, it seems likely the breach of contract claim and counterclaim will be governed by New York law. As those are claims are not challenged in the pending motion, the Court need not make that determination now.

5

trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."); Scott v. GMAC Mortg., LLC, No. 3:10-cv-24, 2010 WL 3340518, at *8 (W.D. Va. Aug. 25, 2010) (denying motion to dismiss where the fraud allegations failed to meet the specific requirements set forth in Harrison but were nonetheless sufficient to permit the defendant to raise a defense to the fraud claim). Assuming they are not, however, the Court will give the Plaintiff an opportunity to amend its Complaint to be more specific in its fraud allegations. Accordingly, the Court grants the motion to dismiss Count II, but dismisses the Count without prejudice to Plaintiff's ability to refile the claim and plead it with more particularity. See Fed. R. Civ. P. 15 (courts "should freely give leave [to amend] when justice so requires.").

Defendants contend, however, that amendment would be futile because even if the fraud claim had been pled with more particularity, the alleged misrepresentations do not give rise to a fraud claim under Virginia law. They rely on Virginia cases that distinguish between "unfulfilled promises or statements as to future events," which typically do not constitute material facts that will support a fraud claim, and "present or preexisting facts," which can be actionable.. ECF No. 20 at 6-7 (citing cases). They posit that the allegedly fraudulent statements here fall in the former category.

The Court disagrees with Defendants' characterization of the allegedly fraudulent statements. Contrary to Defendants' assertions, not all of the statements are statements regarding an intent of future performance, or mere "trade talk" or "puffery." Instead, at least one of the alleged misrepresentations—Mr. Thrasher's statement that he "had just returned from Asia and had contracts for delivery and therefore he could pay SCS for its coal product the stated prices which became part of the purchase orders"—is a statement of a present material fact. As the Fourth Circuit has explained, Virginia law "distinguishes between a statement that is false when

6

made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract.'" City of Richmond v. Madison Mgmt. Grp., Inc., 918 F.2d 438, 447 (4th Cir. 1990) (quotation omitted). While it may have induced SCS to enter into the contracts with Defendants, and while it may have led them to believe that Defendants had the capability to meets its promises under the contract, the statement by Thrasher that he "had contracts for delivery" is a statement that (as alleged) was "false when made."[4] See id. It is not one that only became false when the promisor failed to keep his word. If false, it could support a claim for fraudulent inducement. Accordingly, the Court determines that amendment would not be futile, and that Plaintiff will be permitted to amend its Complaint as to its fraud claim.

In short, Plaintiff has alleged a statement that could support a claim for fraud, although Plaintiff will be granted leave to amend in order to add additional detail sufficient to meet the demands of Rule 9(b), as set forth in Harrison, supra. The Court thus dismisses Count II—the fraud claim—without prejudice to Plaintiff's ability to file an amended Complaint within fourteen days after the entry of this Order.

### B. Motion to Dismiss as to Count III

In Count III, Plaintiff asserts a claim of duress, alleging that Defendants improperly exerted duress in order to get SCS to agree to amend the Purchase Orders. In their written motion, Defendants contended that the Complaint failed to allege facts sufficient to support a duress claim and thus that it is subject to dismissal. Notably, however, the two cases upon which Defendants rely were both decided at the summary judgment stage, not on a motion to dismiss.

---

[4] The Court also concludes, contrary to Defendants' arguments, that Plaintiff has adequately alleged that the misrepresentations were false. ECF No. 1, Compl. at ¶ 48.

See King v. Donnkenny, Inc., 84 F. Supp. 2d 736, 738 (W.D. Va. 2000) (dismissing duress claim pursuant to Rule 56); Centech Grp., Inc. v. Getronicswang Co., LLC, 32 F. App'x 673, at *2 (4th Cir. 2002) (unpublished). In Centech, the court affirmed the grant of summary judgment against a duress claim because a simple "threat" to discontinue performance did not constitute "the coercive circumstances necessary for a claim of economic duress." 32 F. App'x 673, at *2. The court further noted that "[f]or duress to exist under Virginia law, 'not only must a threat be improper, but it must leave the aggrieved party *without any reasonable alternative than to assent to the contract.*'") Id. (quoting King, 84 F. Supp. 2d at 739) (emphasis in Centech). In this case, whether or not SCS had any "reasonable alternative" other than assenting to the amendments to the purchase orders cannot properly be determined at the dismissal stage, but that aspect of the claim has been pled. See Compl. at ¶¶ 54-56 (alleging that Plaintiff's "economic survival and that of its affiliates" "depended heavily upon" or "in large part upon" Xcoal's willingness to accept the amounts of coal that it contracted for" and its "compliance with its obligations."). The Court has carefully reviewed the Complaint and the arguments of the parties and determines that the duress claim is adequately pled and survives Defendants' motion to dismiss.

Defendants raised an additional argument for the first time at the hearing, arguing that typically, the only relief that can be afforded as a result of a duress claim is the voiding of a contract (here, presumably that would be the voiding of the amendments to the purchase orders, which were the contracts alleged to have been executed as a result of duress). Defendants correctly note, however, that Count III does not request relief in the form of voiding the Amendments to the Purchase Orders, but instead seeks compensatory damages. Because this issue was not raised in Defendants' written motion, however, and Plaintiff has not had the opportunity to respond to it in writing, the Court declines to grant relief on this ground. Plaintiff

8

may wish to consider Defendants' arguments when drafting its Amended Complaint, and the Court will entertain a subsequent motion to dismiss on this ground, should the Amended Complaint seek relief on a duress claim other than a voiding of the amendments.

### C. Motion to Dismiss or Strike Request for Attorneys' Fees

Lastly, Defendants move that the Plaintiff's request for attorneys' fees be stricken from the Complaint, arguing that Plaintiff has not identified any exception to the American Rule that would entitle it to recover its attorneys' fees. ECF No. 20 at 11. Instead, the "American Rule," followed in Virginia, provides that "attorney's fees are not recoverable by a prevailing litigant in the absence of a specific contractual or statutory provision to the contrary." Ryder v. Petrea, 416 S.E.2d 686, 688 (Va. 1992) (citation omitted). Significantly, Plaintiff has not responded to this portion of the motion to dismiss and no party raised it at oral argument. Moreover, the Court has reviewed the authorities cited by Defendants and agree that the request for attorneys' fees in this action is improper. See, e.g., C.L. Ritter Lumber Co., Inc. v. Consolidation Coal Co., No. 1:11CV00019, 2011 WL 4963195 (W.D. Va. Oct. 19, 2011) (dismissing request for attorneys' fees under Rule 12(b)(6)); JTH Tax, Inc. v. Whitaker, No. 2:07cv170, 2007 WL 2126300 (E.D. Va. July 16, 2007) (striking requests for attorneys' fees under Rule 12(f)). Accordingly, the Court GRANTS the Defendants' motion insofar as it seeks the dismissal of Plaintiff's request for attorneys' fees.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss. It is GRANTED without prejudice as to Count II and GRANTED as to Plaintiff's request for attorneys' fees, and is DENIED as to Count III. Plaintiff shall have fourteen days from the entry of this Order to file an Amended Complaint.

An appropriate order shall issue this day.

ENTER: This 26th day of October, 2012.

/s/ James C. Turk
Hon. James C. Turk
Senior United States District Judge